# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| JAMES A. SIGMON,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    No. 3:05-CV-591<br>)    Phillips |
| APPALACHIAN COAL PROPERTIES, LLC,<br>    Defendant. | )<br>) |

## MEMORANDUM AND ORDER

James A. Sigmon initiated this declaratory judgment action brought under the district court's diversity jurisdiction, seeking a determination that he is not obligated under an Agency Agreement with Appalachian Coal Properties, LLC, to pay commissions claimed in the amount of $9 million for a proposed sale of Sigmon's coal properties. Appalachian has asserted a counterclaim against Sigmon alleging that Sigmon is liable to Appalachian under the Agency Agreement, or on a theory of unjust enrichment, for a $9 million commission because Sigmon refused to honor an agreement to sell his coal assets to KST Consulting Acquisition Company, LLC.

## Factual Background

The facts giving rise to this declaratory judgment action are as follows: On or about August 16, 2004, Sigmon and Appalachian executed an Agency Agreement for brokering a sale of Sigmon's coal properties. On or about September 29, 2004, as permitted by its terms, Sigmon cancelled the Agency Agreement.

Appalachian states that after terminating the Agency Agreement, Sigmon continued to negotiate with buyers brought to him by Appalachian, and in January 2005, the Agency Agreement was reinstated by agreement between the parties, and the parties agreed to a revised commission structure. Also in January, Appalachian introduced to Sigmon a potential buyer for the coal properties – KST Consulting Acquisition, LLC. KST submitted letters of intent to purchase Sigmon's coal assets on February 9 and February 18, 2005. A meeting among Sigmon, KST and Appalachian was held on or about March 9, 2005, to discuss KST's interest in Sigmon's sale of its coal assets to KST. The March 9 meeting, did not, however, result in a sale of Sigmon's coal assets to KST, according to Sigmon.

Appalachian asserts that at the March 9 meeting, KST and Sigmon reached an agreement on all essential terms and conditions for the sale of Sigmon's coal assets to KST for $70 million. Appalachian further asserts that Sigmon refused to honor his agreement with KST to sell his coal properties under the terms and conditions agreed upon. Appalachian avers that Sigmon's failure to honor his agreement with KST and refusal to pay Appalachian commissions constitutes a breach of the Agency Agreement, as modified in January 2005. In its counterclaim, Appalachian asserts that Sigmon was a direct beneficiary of Appalachian's efforts to bring a willing and able buyer to Sigmon and that Sigmon would be unjustly enriched if he receives the direct benefit of Appalachian's efforts in bringing a buyer willing and able to pay more than Sigmon's asking price for his coal properties if Sigmon is not required to compensate Appalachian for its work performed on

Sigmon's behalf. Appalachian avers it has suffered damages as a result of Sigmon's actions in the amount of $9 million.

Sigmon, on the other hand, denies that an agreement was reached with KST on March 9 to sell his coal properties. Sigmon avers that KST did not submit to him an offer to purchase, and he did not approve any offer to purchase his coal properties by KST. There was no sale, and therefore, Appalachian is not entitled to any commissions or other alleged damages. Sigmon states that as of the filing of this declaratory action, he has not sold the coal properties to KST or to anyone else. As a further defense to Appalachian's counterclaim against him, Sigmon avers that any claim by Appalachian is barred because it is not a corporation in good standing and may not recover commissions because it lacked a broker's license from the applicable regulatory authorities. Sigmon has moved to dismiss Appalachian's counterclaim against him. In addition, Sigmon has moved the court to enter a declaratory judgment in his favor that he is not obligated to Appalachian under the Agency Agreement or on any theory of unjust enrichment.

## **Analysis**

A motion to dismiss under Rule 12(c), Federal Rules of Civil Procedure, is treated the same as a motion filed under Rule 12(b)(6), it requires the court to construe the complaint in the light most favorable to the plaintiff (in this case, the counter-plaintiff, Appalachian), accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of its claims that would entitle

it to relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir.) *cert. denied,* 498 U.S. 867 (1990). The court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The court must liberally construe the complaint in favor of the party opposing the motion. *Id.* However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434 (6th Cir. 1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

In addition to his motion to dismiss Appalachian's counterclaim, Sigmon has also moved for declaratory judgment against Appalachian. Under the Declaratory Judgment Act, 28 U.S. C. § 2201(a):

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

A district court examines five factors in determining whether to exercise jurisdiction over a declaratory relief action: (1) whether judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata; (4) whether the use

of a declaratory action would increase the friction between federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Scottsdale Ins. Co. v. Roumph,* 211 F.3d 964, 968 (6th Cir. 2000).

The first and second factors weigh in favor of exercising jurisdiction over Sigmon's declaratory relief action. A declaratory judgment would settle the controversy between the parties, and clarify the respective positions of the parties with regard to the Agency Agreement. There is nothing in the record to indicate that Sigmon is using this declaratory action for procedural fencing or to provide an arena for a race for res judicata, so this factor weighs in favor of exercising jurisdiction. There is no underlying state action in this case. The fifth factor, whether there is an alternative remedy that is better or more effective is not determinative of the court's decision to exercise jurisdiction over this declaratory action. The court finds that four out of five factors weigh in favor of the court exercising jurisdiction over Sigmon's declaratory judgment action. Next, the court will address the merits of Sigmon's motions.

First, Sigmon asserts there was no breach of the Agency Agreement. The Agency Agreement recites that Appalachian is entitled to receive commissions based upon the sale price. The Agency Agreement also provides that "any offer to purchase taken by [Appalachian] shall be subject to approval by [Sigmon] . . . ." The draft letter of intent sent by KST to Sigmon after the March 9 meeting provided:

> Unless and until a definitive asset purchase agreement (the "Definitive Agreement") is signed and except as otherwise expressly provided in this letter, neither KST nor Sellers shall be obligated to complete the transactions contemplated by this letter, and it is not intended to constitute and shall not create a binding contract upon any party, a commitment letter, or an agreement to agree.

Sigmon never signed the letter of intent, which contemplates a subsequent agreement, a "Definitive Agreement." Sigmon avers that without a sale or even an agreement of sale, Appalachian has no claim to commissions for a sale that never was made.

Appalachian argues that the Agency Agreement, as revised, was in effect and enforceable at the time of the deal with KST. Appalachian facilitated negotiations between Sigmon and KST, which was able and willing to pay more than Sigmon's asking price and agreed to all essential terms required by Sigmon for the sale of his coal properties. Under the terms of the Agency Agreement, Appalachian argues, the value of these services was $9 million. Thus, Sigmon's failure to honor the sales contract with KST and his refusal to pay the commission to Appalachian constitute a breach of the Agency Agreement.

At this juncture in the proceedings, the record does not contain sufficient information for the court to evaluate the merits of Sigmon's motion for judgment on the pleadings, or his motion to dismiss the counterclaim filed by Appalachian. The record is devoid of sufficient facts to determine whether the parties reinstated the Agency Agreement in January 2005; whether KST made an offer to Sigmon for his coal properties; whether such offer, if made, was accepted or rejected by Sigmon, and whether any rejection of an

offer by KST constituted a breach of the Agency Agreement, entitling Appalachian to damages. A motion for judgment on the pleadings under Rule 12(c) may be granted only if all material issues can be resolved on the pleadings by the district court; otherwise, a summary judgment motion or a full trial is necessary. Wright & Miller, *Federal Practice and Procedure: Civil 3d,* § 1368 pp. 248-51 (2004). The issues raised by Sigmon are more properly considered on a motion for summary judgment after the parties have had an opportunity to conduct discovery and develop the evidence.

## **Conclusion**

For the reasons stated above, Sigmon's motion to dismiss counterclaim [Doc. 7] as well as his motion for judgment on the pleadings [Doc. 8] are **DENIED**, without prejudice to refiling the same after the parties have had an opportunity to develop the record in this case.

The clerk is **DIRECTED** to set this matter for a scheduling conference.

**ENTER:**

    s/ Thomas W. Phillips
United States District Judge