IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JAMES A. SIGMON,<br>    Plaintiff,<br><br>v.<br><br>APPALACHIAN COAL PROPERTIES, LLC,<br>    Defendant. | No. 3:05-CV-591<br>Phillips |

## MEMORANDUM OPINION

James A. Sigmon initiated this declaratory judgment action brought under the district court's diversity jurisdiction, seeking a determination that he is not obligated under an Agency Agreement with Appalachian Coal Properties, LLC, to pay commissions claimed in the amount of $9 million for a proposed sale of Sigmon's coal properties. Defendant Appalachian says that it presented the plaintiff with a ready, willing and able buyer, but that Sigmon, for no valid reason, refused to proceed with the sale. The defendant asserts that, under Tennessee law, it should be paid the commission it would have received if the plaintiff had followed through with the sale. Sigmon has moved for summary judgment [Doc. 19] and Appalachian has responded in opposition [Doc. 34]. For the reasons which follow, Sigmon's motion will be granted and this action dismissed.

## Factual Background

James A. Sigmon is the principal of various business entities that are involved in the coal industry. These entities include Sigmon Coal Company, Inc.; Sigmon West

Irrevocable Trust; Dale Co., LLC; Jacobe Co., LLC; J. Hoke Co., LLC; Jericol Mining Inc.; Marion Energy, LLC; Moretz Energy, LLC; and Hobcaw Coal Co, Inc. Sigmon originally contacted William "Ned" Connolly about providing broker services in connection with the sale of the Sigmon entities. On March 17, 2004, Connally and two other principals formed Appalachian for the purpose of brokering a sale of the Sigmon entities on Sigmon's behalf. In August 2004, Sigmon and Appalachian entered into an Agency Agreement whereby Appalachian agreed to provide broker services in connection with the sale of the Sigmon entities. In exchange, Sigmon agreed to pay a commission based upon the sale price.

Appalachian subsequently began contacting persons interested in buying the Sigmon entities, including (but not limited to) KST Consulting Acquisition Company, LLC. On or about September 29, 2004, as permitted by its terms, Sigmon sent a letter to Appalachian announcing that the Agency Agreement was cancelled.

On or about October 5, 2004, two of Appalachian's principals, Ned Connolly and Joe Ison, met with Sigmon to discuss reinstating the Agency Agreement. According to Connolly, Sigmon agreed that Appalachian would continue to negotiate with KST and other parties that had previously expressed an interest in buying the Sigmon entities. Appalachian would negotiate with new buyers, but only with Sigmon's prior authorization. For purposes of summary judgment only, Sigmon admits that the Agency Agreement was modified and reinstated, and that the parties negotiated a revised commission structure for the Agency Agreement in January 2005.

-2-

Appalachian arranged a meeting between Sigmon and KST on March 9, 2005 to negotiate the sale of the Sigmon entities. Appalachian contends that the parties reached an agreement on all essential terms of a sale. These terms included (1) a sale price of $70 million, (2) a refundable payment of $2 million into escrow, (3) a shortened due diligence, (4) confidentiality of Sigmon's records, (5) an agreement to cooperate and use commercially reasonable efforts to close on the deal within a certain period of time, and (6) revision of the draft letter of intent and other documents to reflect the terms. Sigmon denies that any agreement was reached on March 9, 2005. Among other things, Sigmon alleges that KST refused to pay $2 million in nonrefundable "hard money."

After the meeting, KST attorneys forwarded to Sigmon a Letter of Intent, Escrow Agreement, and Confidentiality Agreement. The draft letter of intent sent by KST to Sigmon provided:

> Unless and until a definitive asset purchase agreement (the "Definitive Agreement") is signed and except as otherwise expressly provided in this letter, neither KST nor Sellers shall be obligated to complete the transactions contemplated by this letter, and it is not intended to constitute and shall not create a binding contract upon any party, a commitment letter, or an agreement to agree.

Sigmon never signed the letter of intent, and to date, has not sold the Sigmon entities to KST or anyone else. On March 16, 2005, Sigmon sent a letter to KST announcing that he was terminating the negotiations with KST.

-3-

Sigmon filed the instant action when Appalachian asserted that Sigmon was liable to Appalachian under the Agency Agreement or on a theory of unjust enrichment for a $9 million commission because Sigmon refused to honor an alleged agreement to sell the Sigmon entities to KST. That claim is the basis of Sigmon's request for a declaratory judgment and Appalachian's counterclaim.

## Analysis

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence sufficient to support a motion under Rule 56, Federal Rules of Civil Procedure, the non-moving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case

with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

Sigmon argues that he is entitled to summary judgment on the following grounds: (1) Appalachian has no claim for unjust enrichment because he has not been enriched and because the parties had a contract; and (2) he has no liability for a commission on a sale that did not occur because there was never an agreement with KST to sell the Sigmon entities.

Appalachian has responded in opposition, arguing that Sigmon's motion should be denied because: (1) there are genuine issues of material fact regarding Sigmon's breach of contract and unjust enrichment; and (2) the parties have not completed discovery.

### A. Appalachian has no Breach of Contract Claim

Sigmon submits that for purposes of this motion, the court should consider that the Agency Agreement was in effect and that it entitled Appalachian to receive a commission upon a sale of the Sigmon entities during its term. However, the Agency Agreement plainly recites that Appalachian is entitled to receive commissions based upon a Sale Price. The Agency Agreement also provides that "any offer to purchase taken by [Appalachian] shall be subject to approval by [Sigmon] . . . . " The Letter of Intent submitted to Sigmon by KST following the March 9, 2005 meeting plainly states that there is no agreement between Sigmon and KST:

> Unless and until a definitive asset purchase agreement (the "Definitive Agreement") is signed and except as otherwise expressly provided in this letter, neither KST or [Sigmon] shall be obligated to complete the transactions contemplated by this letter, and it is not intended to constitute and shall not create a binding contract upon any party, a commitment letter, or an agreement to agree.

In addition, Sigmon's affidavit states that no agreement with KST was reached at the March 9 meeting, or at any other time. Appalachian has submitted the declaration of Scott Tepper with KST, who states that the parties made a verbal agreement at the meeting, and states his belief that they "intended for the verbal agreement to be binding." However, Tepper's declaration is contradicted by the terms of the Letter of Intent which was drafted by KST's attorneys. Moreover, even if the Letter of Intent had been executed, it only contemplated that the parties might enter into a contract, not that they had agreed upon all essential terms for a sale of the Sigmon entities.

Without a sale or even an agreement of sale, Appalachian has no claim to commissions. Appalachian's claim for any commissions due under the Agency Agreement therefore fails because there was no contract of sale and no sale to KST or to any other entity. Accordingly, the court finds that Sigmon is entitled to judgment as a matter of law on Appalachian's claim for breach of the Agency Agreement because Sigmon did not enter into an agreement with KST to sell the Sigmon entities and he did not sell the Sigmon entities.

-6-

### B. Appalachian has no Unjust Enrichment Claim

Appalachian's claim for unjust enrichment fails because there is a contract (the Agency Agreement) between Sigmon and Appalachian that relates to the subject matter of the unjust enrichment claim. *See Daugherty v. Sony Electronics, Inc.,* 2006 WL 197090 (Tenn.App. Jan. 26, 2006) ("One of the underlying requirements for stating an unjust enrichment claim is that there is no valid and enforceable contract between the parties"); *Metropolitan Gov't of Nashville v. Cigna Healthcare of Tennessee*, 2005 WL 3132354 (Tenn.App. Nov. 22, 2005) ("Because a contract implied in fact exists, Metro is precluded from recovering damages under the equitable theory of unjust enrichment"); *Freeman Indus., LLC v. Eastman Chem. Co.,* 172 S.W.3d 512, 525 (Tenn. 2005) ("courts may impose a contract implied in law where no contract exists under various quasi-contractual theories, including unjust enrichment.")

Appalachian alleges that the Agency Agreement was modified and reinstated and in effect through the March 9, 2005 meeting with KST and Sigmon agrees that the court should accept that allegation as true for the purposes of this motion for summary judgment. This fact is fatal to Appalachian's claim for unjust enrichment. But, even assuming there was no Agency Agreement, Appalachian conferred no benefit upon Sigmon. To prevail on a claim for unjust enrichment, Appalachian must show: (1) a benefit conferred upon Sigmon by Appalachian; (2) appreciation by Sigmon of such benefit; and (3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof. *Daugherty v. Sony Electronics, Inc.,* 2006 WL 197090 (Tenn.App. Jan. 26, 2006).

Sigmon has stated, via affidavit, that he has not benefitted from the negotiations with KST and Appalachian has produced no evidence that Sigmon was benefitted by its unsuccessful efforts to find a buyer for the Sigmon entities. Appalachian insists that KST was ready, willing, and able to buy, but that Sigmon in bad faith rejected the agreement. However, the proposed escrow agreement stated that "in the event that [KST] provides written notice to [Sigmon] at any time prior to the execution of a Definitive Asset Purchase Agreement that [KST] is not satisfied in its sole and absolute discretion with the results of the evaluation of the Assets and assumed liabilities . . . ," KST may withdraw the Escrow Funds. The proposed Escrow Agreement establishes at best that KST may have been willing to purchase the Sigmon entities on its terms, not that the parties had reached a "definitive agreement." Accordingly, the court finds that Sigmon is entitled to judgment as a matter of law on Appalachian's claim for unjust enrichment because there was a contract covering the subject matter, and alternatively, Appalachian has not shown that Sigmon benefitted from Appalachian's unsuccessful attempts to find a buyer for the Sigmon entities.

**C. Appalachian has not Established that Further Discovery is Needed.**

Last, Appalachian contends that Sigmon's motion for summary judgment is premature because the parties have not completed discovery. However, in a memorandum and order entered September 4, 2008, Magistrate Judge Guyton denied Appalachian's motion to compel, finding that Appalachian was undertaking a "fishing expedition" on

matters not relevant to the claims at issue. Rule 56(f) presupposes that affidavits filed by the non-moving party should include a description of the information needed and an affirmative demonstration of how the requested discovery will permit the non-moving party to refute the grounds alleged for summary judgment. *See Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.,* 280 F.3d 619, 627 (6th Cir. 2002). A party cannot avoid summary judgment on the basis of nebulous assertions. *See Gordon v. Barnes Pumps, Inc.,* 999 F.2d 133, 138 (6th Cir. 1993). Because Appalachian has not shown that further discovery would aid the court in resolving the pending motion for summary judgment, the court finds that the motion is ripe for decision.

## Conclusion

For the reasons stated above, Sigmon's motion for summary judgment [Doc. 19] is **GRANTED**, and this action is **DISMISSED.**

**ENTER:**

s/ Thomas W. Phillips
United States District Judge